May it please the court. My name is Molly Lenz. I'm here with Ella Houssagan, a UCLA law student. Together we represent, we are pro bono counsel for Keone Labatad, a former Pro Se inmate. I will be addressing the Supreme Court's decision in Minnici v. Pollard, as well as the other procedural issues, and Ms. Houssagan will be addressing the substantive amendment issues.  As every court has held that has looked at the issue, Minnici has no bearing on a Section 1983 claim, such as my client's. As an initial matter, Bivens applies only to claims against federal officers, whereas Section 1983 applies to those acting under the color of state law. Also, do the individual private employees of Corrections Corporation of America have the right to invoke qualified immunity to your lawsuit? They do not. No, Your Honor, they do not. Well, then it doesn't sound like it's a 1983 action to me. Where's the state action? Where's the state action? The state action is because, as Justice Scalia has said in the Rosenthal decision, that there's nothing more palpable than exercising state power than exercising police and prison power. And here, every single court that has examined the issue, including the Fifth Circuit, the Sixth Circuit, the Tenth Circuit, and the Eleventh Circuit, have all held that Section 1983 applies to privately run prisons. What do we do with the Supreme Court's decision in Malesko, which held that a federal prisoner can't bring an action against a private prison company under Bivens either? Well, Malesko is actually helpful, Your Honor. Malesko, both the majority opinion as well as the dissent in that case both note that under Section 1983, there would be a private cause of action had the inmate in that case been in a state, had been a prisoner of the state. And the reason for the lack of qualified immunity is separate from the state action question. It's because of the basis for qualified immunity inhering in the need for state, for officials to have a certain amount of discretion and so on. Correct, Your Honor. It's just two different inquiries, as you said. But what do we do with all the language in these Supreme Court cases that say we look to the availability of alternative state remedies? You're urging us to find that the evidence here was evidence of deliberate indifference to the cell assignment and the fact that they were putting two opposite gang members in the same cell. If you can establish deliberate indifference, it seems to me you can certainly establish simple negligence under the Arizona tort of negligence. Can't you? Well, that may be the case. But, again, under... So there would be an alternative remedy. There would be an alternative. There very well may be an alternative state remedy. But, again, under... Has the defendants here argued any of this? No, they have not, Your Honor. And, again, every court that's examined this issue has rejected it. They haven't argued that they're not under color of state law. They haven't argued that they have qualified immunity or anything. No. Does that go? Do we have an independent obligation to make sure that we have the power to afford relief here? You very well may. But, again, I think the precedent, including the Supreme Court precedent, is clear that Bivens' actions, which are judicially created causes of actions, versus 1983 actions, which are expressed congressional authority, are just two separate lines of cases. And Your Honor's point with respect to whether or not there's an alternative state remedy, that is simply not an analysis that the Court engages with respect to 1983. And that's the Supreme Court's decision in Monroe. Now, whether there's state action under 1983 is an element of the cause of action. And it's not jurisdictional. If they don't plead it, they don't plead it. Correct, Your Honor. Can I just ask one final question about that? Yes. Because I think we're flogging this pretty well. I read the post-Menicci, if that's the right way to pronounce it, opinions that deal with arguments about whether a prisoner who is a state prisoner in a state-operated facility that contracts out certain services is bringing a Bivens cause of action or a 1983 cause of action that is unaffected by the Menicci decision. Here we have a state prisoner. Is the facility in which he was incarcerated a state-operated facility that is entirely contracted out, or is it a private facility? And what's the difference, and does that make a difference? I'm not sure that it – again, I don't believe that it does make a difference. And to be honest, I'm not sure that that fact is even in the record for Your Honor. I couldn't find it, but I want her to consider. We do know that CCA located the prison in Arizona, but the prisoners are all Hawaii state prisoners. Does that matter? I believe that's the case. I don't know. Again, I do not believe that's legally relevant here. And I think I'm running out of time, so if I could just very briefly address the Rand issue before this court, before yielding my time to my colleague. Here, the fact that the Rand notice was issued late requires reversal. This court just last year in Woods held that Rand notices must be issued at the time that summary judgment motions are filed and that the timing affects the adequacy of the notice. Here, because my client only received the Rand notice after he had submitted his papers, it by definition could not inform him of what he needed to do in order to oppose summary judgment. What would he have done beyond what he had already done once the second Rand notice issued? Well, I don't think we can know what he would have done, but under Klingel this court has held that we do not presume sophistication with respect to pro se litigants. We don't have to question whether or not he sophisticated. He did file a response which included affidavits ultimately determined to be inadmissible by the district court, but it wasn't as if he defaulted. No, he did submit. He did the best that he could. Again, he did submit certain affidavits, as Your Honor pointed out, which were deemed to be not in compliance with Rule 56's requirements. Of course, if he got the notice. He presumably could have offered additional. Submitted a competent affidavit. Exactly, Your Honor. Is there anything in the notice that says you have to have the affidavits that are based on personal knowledge and otherwise comply with Rule 56? Actually, it does say you need to submit evidence in compliance with 56, and 56 is the rule that says you need to submit an affidavit. That's right. But he cites Rule 56 in his own response to their summary judgment motion. He breaks down the fact-by-fact response in a way that complies not only with Rule 56 but also the local rules. So I guess my question is a variation on what Judge Tolman asked. What is there in an objective review in this record that suggests that there was anything else that the RAND notice would have informed him of that he didn't already know? Well, we've already identified the affidavits. The district court also found arguably dispositive of the fact that she did not feel that he submitted competent evidence with respect to his notification of the prison about his fear of being harmed with lobotod. And I think it's also worth noting that at the time that he was filing his opposition papers, he was affirmatively telling the district court that he did not understand the complex legal issues. That was the subject of his proffered declarations. They were all addressing prior notice to his jailer. They were, but again, the district court found that he failed to adequately support that factually. And again, I've – Do you want to address the merits at all? I would like to cede the rest of the time to my colleague. Thank you. All right. I did not understand that you were doing that. You should have told us. All you said is you were here with her. You didn't say that she was going to argue. Okay. Thank you. Apologies. May it please the Court? My name is Ella Hooshaugen. Defendants exposed my client to a substantial risk of serious harm when, after he fought with a rival gang member, they housed him with another member of the same rival gang and then handcuffed him and left his rival unrestrained. Is your position that, as a matter of constitutional law under the Eighth Amendment, the warden may not – or the warden must segregate prisoners by gang affiliation and race? No. That's not our position. Our position is that the Eighth Amendment requires defendants to pay attention to circumstances that are ripe for gang retaliation, such as the circumstances here. Is there a race issue in this case? Sorry? Is there a race issue in this case? There is not a race issue in this case. This does not pose any problem with the Equal Protection Clause. Exactly. Okay. So now we're back to the level of proof that he has to show in order to establish deliberate indifference. Right? Right. And what admissible evidence do we have in the record to establish knowledge on the part of the warden that he shouldn't have housed these two guys together in the same cell? Here, Labattad demonstrated that the defendants knew because, one, the risk was obvious, and, two, he told them. Well, if the risk was obvious, why did we not have a problem when the two of them were in the general population for many months before? When they were in general population together, Labattad hadn't immediately preceding that been in a fight with another member of the USO gang, and they weren't in a segregation cell where they're going to spend 23 out of 24 hours a day together and handcuffs are going to be used. Did both of the combatants in the original fight assure the correctional officers that the fight had nothing to do with gang? It was sort of, I guess I'd call it personal disrespect when they bumped shoulders on the stairwell. That's right. It was a fight over respect or over pride. That doesn't infirm the inference to which my client was entitled at summary judgment that it would provide motive to Mara to retaliate against him because of their rival gang affiliations and the circumstances under which they were housed. In short, defendants were deliberately indifferent, the risk was obvious, and they seek to immunize themselves from liability by way of a housing policy that says they ignore gang affiliation in all housing assignments, no matter how dangerous the circumstances. And the Eighth Amendment doesn't... What does that policy say? If you refer to the warden's affidavit, Your Honor, it says that we do not consider gang affiliation in housing assignments. Per se, but you went further and said without regard to threat, and the warden testified that if we do have specific threats, then we do take that into consideration, did he not? I would argue that in this situation there was enough evidence that there would be a threat. Counsel, that's not my question. Did the warden say that or not? I can look in the record and on rebuttal address exactly what the warden said, but the case-by-case analysis does not take gang affiliation into account, no matter, it seems to me, no matter the circumstances. But the warden is saying you've got to have more than just gang affiliation. We have to have actual threat information. Which can be related to gang affiliation. Absolutely. There is more than gang affiliation. There's gang affiliation, the fact that Labatad fought with Gideon, a member of the rival gang, and then was immediately housed in a small cell with another member of the same rival gang, and then handcuffed while Mara was left unrestrained. He was a sitting duck, essentially. With the Court's permission, I'll reserve. Thank you, ma'am, for rebuttal. Thank you. May it please the Court. I am Nick Aceto, arguing today on behalf of the police. On the RAND notice issue, Labatad has never to this day... Can you come back for one minute? You agree that you never raised any of these issues about immunities or state action or anything like that? That's correct, Your Honor. I'd add that waiver is discretionary. And you don't want to offer any argument on it, I gather, because you haven't. I'm sorry? You don't care to offer any argument on those issues because you got up, stood up, and didn't do it, right? Do you want to argue about those issues at all? You're telling us waiver is discretionary, but you're not making the argument. I certainly can. Let's ask a more direct question. Are you waiving that claim or not? No, we're not. Because you didn't raise it? No. So why shouldn't we consider it waived because you didn't raise it? As you had mentioned, I believe that this Court does have the authority, the obligation to take a look at it. Why the obligation? We might have the discretion, but we certainly don't have the obligation. Well, it does have the discretion. This Court does have the discretion to take a look at the issue. I assume you're not saying it's jurisdictional then? No, I'm not. All right. I'm not. I'd like to start off with the Rand notice. As I was saying, Labitad has never to this day argued that he did not know that he couldn't supplement his response after receiving the notice. He never raised it in the post-judgment motion. He didn't say it in his notice of appeal. He didn't say it in his informal opening brief. And it wasn't asserted in the replacement briefs filed by his appointed counsel. You say this. You regard it as relevant for some reason that Labitad's no longer in prison. Why is that relevant? On the Rand issue? Yes. Well, if this case were to go back, if this case were to hold that the Rand notice was reversible error because of the timing, he would get the benefit of a second round of ---- So he didn't get it when he was entitled to it. That's correct. So what's the relevance of the fact that he's not in prison now? The point is if there's something to correct, he should be allowed to correct it. Well, the purpose of the Rand rule and the Rand notice is to benefit pro se prisoners. Right. It's not to benefit pro se non-prisoners. So if this case were to go back ---- He wouldn't be entitled to a Rand notice now, but he was entitled to it at the time he got it. Well, it still would be subverting. It's our position that it still would be subverting the purpose of a Rand notice in the first place. So all you have to do if a late Rand notice is issued is make sure that the appellate proceedings last longer than the prison sentence and it becomes irrelevant? It becomes essentially harmless error? Well, I guess that's one way of looking at it. But I don't think we even need to get to that issue. As we argued in our brief, if this, in fact, were error, which we maintain that it wasn't ---- Well, of course it was. I mean, she didn't give a notice when she was supposed to give it. Why would it not be error? It was ---- Notice was given. Yes. But not until after he filed his response. Well, I don't believe that the case law requires that it is filed. Well, I understand that Woods v. Carey says at the time. But that opinion was written with an eye towards when the notice was issued in that case, which was years before the motion. But what good is a notice after the fact to anybody about anything? Well, he received the notice. And upon receiving it, he could have at that time supplemented his response.  Well, that's true, but it doesn't prove it wasn't error. It may prove that it wasn't prejudice, but it certainly doesn't prove it wasn't error. Well, RAND doesn't per se require that it ---- or Woods require that a RAND notice issue at the ---- concurrently, simultaneously with ---- Again, we need to write an opinion on doing that if you think that's questionable. A notice is a notice, i.e., before you have to do something. Well, again, the notice was issued. Although it was issued a day after he filed his response, it did allow him to file a supplemental response if he wanted to. But let's put that aside. Let's look at whether or not, assuming there was error, whether or not it was harmless. Just, Tom, as you had pointed out, he filed a verified response that responded to each of the arguments in our motion. He provided citations to legal authority. He cited Rule 56. He cited the standard in Rule 56. He provided a verified statement of facts that responded to each of our statement of facts. He asserted additional facts. And he cited two exhibits, all in compliance with the local rule. Do we have to give him the law degree right now? All in compliance with the local rule. Arizona's district court rule. He also attached multiple exhibits, including answers to requests for admissions, investigation reports, facility policies, disciplinary reports, grievance documents, medical records, and affidavits. That's an extraordinary response for a pro se prisoner. He clearly understood that, he understood what Rule 56's requirements and consequences were. And the reason that he didn't file a supplemental response after receiving the written notice when he did is because he didn't need to. Counsel, can I ask you two questions about that? Sure. How do you square the argument you're making, which essentially says he did whatever the notice was going to tell him to do, with the statements in this circuit's case law that indicate you can't really look at what was filed and speculate as to whether the individual had sufficient sophistication to understand what the notice would have told him had it been issued or issued timely? Well, I think it's very relevant that he didn't make any inquiry as to whether he could have filed a supplemental notice. There were opportunities to do so. Mr. Labichat, in particular, is very litigious. He filed multiple motions for appointment of counsel. So I think that that is a very relevant consideration. I also think when you look at the RAND notice itself, it's very clear that he had 30 days from the issuance of that notice to file a response that complied with all of the requirements. Well, in fact, the whole document looks as if it were issued right after the summary judgment was filed. It was just the stock ordinary notice. So it certainly doesn't say, and if you've already filed a response, you get to file another one. It did not say that, no. In fact, he didn't file the response early, did he? In other words, in terms of the timing from the original filing of the summary judgment motion, he didn't have more time. Is that right? He filed it towards the end of his deadline. That's correct. So he could easily have thought, well, the time's run, and that's it. I'm done. I disagree with that. Conceivably, I guess he could have, but I think it's more likely that he did. That he did consider that, and he understood that, hey, my response complies with all of this. It actually goes beyond it. Help me with the chronology. You move for summary judgment. He responds. The district court realizes that it should have issued a RAND notice, so it issues one. Did it extend the deadline for filing anything further, or just wait 30 days before Judge Silver entered her summary judgment order? There wasn't any formal extensions. How long after the issuance of the RAND notice did the district court issue its ruling? I don't know off the top of my head. Was it days, weeks? No, it wasn't days or weeks. So it was months later? Yeah. We had 14 and some change to file a reply. We waited past that time. We waited a few additional weeks to file our reply. We believe that we were waiting to see if he was going to file something. So our reply was beyond the deadline. So your reply came next in time after the RAND notice? Yes, it did. Yes, it did. I'd like to switch gears to the Eighth Amendment claim. They are essentially arguing that, as a matter of law, prisons cannot sell rival gang members together. Counsel, can I ask you one question about that? I think that the question here, certainly there's a per se element to the argument, but moving beyond that, it's one thing to house them together. It's another thing, perhaps, to leave one unguarded in handcuffs with an individual with whom he has not only sold but who they know is a member of a rival gang and who they know is a member of the gang that the individual next to him, helpless in handcuffs, fought with three days earlier. It's that added element of handcuffing him and putting him in the cell next to him, unguarded for at least a brief period, that perhaps raises a different set of facts. So can you address that additional fact? Yes, I can. And I don't think that the evidence either way clearly lays out how that works. Administrative segregation inmates, before they can leave their cell, have to be restrained. Right. Now, to do that, they put their hands through a port in the cell door. So when they say, cuff up, whoever it is that they're referring to will go to the door and put his hands in like this. And that was at the point when Mara allegedly came over and assaulted him, when they were in the process of doing that. It wasn't a situation where they cuffed him, threw him in the cell, and shut the door and walked away. No, I understand that. But there was at least enough of a lapse in time in which a guard was not physically right there that permitted Mara to at least land several blows of some force. And at that point, the guards came in and broke it up. We don't know exactly how long that was. We don't know what led the guards to come in. At least my reading of the record didn't reveal that. But the fact that for even a brief period, one of them is absolutely helpless and the other is there, doesn't that raise the concern level at least to some extent? Well, I think whatever concern there is with that, I think you have to juxtapose compared to the alternative of opening a cell door with two unrestrained inmates or having an officer go into that cell with two unrestrained inmates. Now, the process of cuffing them up before they leave the cell, that's not specific to inmates that are validated gang members. That's anybody in an administrative segregation. I mean, you don't get there because you've been a model prisoner. That's right. Yeah. That's right. And in this case, inmate Labitad was placed in there for the altercation he had a few days prior. Okay. Your time is up. Thank you very much for your argument. Thank you. I'll give you one minute to work that out. As Your Honor pointed out, the WRAN notice is a notice to an unsophisticated litigant. Defense counsel argues that my client should have filed a motion for clarification or the like. I am troubled by the fact that if there was a substantial delay after the issuance of the WRAN notice, he had plenty of opportunity to file something more. You haven't convinced me yet, despite admirable efforts, that he had something more to say than what he'd already filed. Why can't we consider that in evaluating whether or not it's reversible error? If you look at the text of the WRAN notice itself, the notice never tells him that he's being provided with an additional 30 days. To me, my problem is that looking at what he did file and looking at the WRAN notice, I just don't see any indication that he would have said one word different. He did a pretty good job. Well, we don't know whether he would have done something different. True. We don't know whether if he got another chance. But in terms of what the WRAN notice told him, it told him to do basically what he did. The district court and the defendants shouldn't benefit because of the fact that my client's substantive rights were not followed. Well, I'm trying to say I don't see where they benefited. That's what I'm saying. Because there's nothing in the WRAN notice or, put another way, can you point to something in the WRAN notice that told him to do something he didn't do? Well, the WRAN notice told him to file evidence and affidavits in compliance with Rule 56. The district court at least found that he did fail to do that. Rule 56 applies. He knew Rule 56 applied. He read Rule 56. He cited it. He basically complied with it. Well, he did his best to comply with it. And there was nothing in that notice that said, oh, the way you complied with it wasn't the right way, you had to comply with it a different way. This Court has found that absent exceptional circumstances, which this Court, which this case is not, WRAN notices, because they are substantive rights, are entitled to harmless error analysis does not apply and ought to remain. Counsel, surely you're not arguing that they have to be he has to know for sure that there are admissible affidavits. If that were the standard, there would be a lot of lawyers in trouble in filing Rule 56 motions with purported affidavits that the district court ultimately rules are inadmissible. Well, we think that our client was entitled, as this Court has repeatedly said, to his substantive right of the WRAN notice. Frankly, it seems to me that your better argument is that before throwing a completely disregarding his affidavit, she should have given him a chance to file compliant ones. Well, as we have made that honor in our briefing, and, yes, we do think that under it was an error for the district court. If she felt that there was a procedural deficiency with respect to the evidence that he had offered, he should have been provided with an opportunity to cure. My question is, do they make a difference? Well, we believe that they do, Your Honor. Thank you for your consideration. Thank you both for your arguments. The case of Labateb v. Correctional Department of America is submitted.
judges: Rosenthal, Berzon, Tallman